Good morning. My name is Stephen Manning. May it please the Court, along with Jessica Rotman, Jennifer Boyle, and Elizabeth Wydra, we represent the petitioner, Mr. Marcelino Sobreanez-Cortez. And I would like to reserve three minutes for rebuttal. Certainly. In this case, Mr. Sobreanez challenges the fundamental fairness of his immigration court removal hearing on two related but alternative grounds. The first is the immigration judge effectively denied him his right to counsel. And the second is the immigration judge mismanaged the transition of this case, if indeed it were to proceed per se, from that of a counsel application to a per se application. The petitioner is a Mexican citizen who is eligible for and applied for cancellation of removal under the immigration statute to avoid being deported from the United States. Removal proceedings were started in Los Angeles and later moved to Portland. There were two different immigration judges who presided over four different preliminary hearings, two merits hearings scheduled. At the first merits hearing, the trial counsel, Mr. Sobreanez's trial counsel, didn't show up at that hearing. So the immigration judge called her on the phone, adjourned the matter, and set it over for another merits hearing. At the other merits hearing, the petitioner appeared without a lawyer, proceeded per se on his cancellation application, and the immigration judge denied him. The immigration judge made two critical errors which violated the petitioner's due process rights. The first error that the immigration judge made is he did not follow this Court's the simple rule this Court outlined in Tawadros. Which was what? I'm sorry, Your Honor. He said which was what. Which was what. What was the simple rule he violated? The Tawadros rule is it's a two-part rule, and it requires that an immigration judge, before a noncitizen can appear, before a noncitizen appears per se in a removal proceeding, the immigration judge must make an inquiry, we call it a counsel inquiry, and ask, do you wish to proceed without a lawyer? The immigration judge must then receive a knowing and voluntary affirmative response. That's what Tawadros requires. And here, the immigration judge did not do that. Here, outside of any scheduled hearing, on motions and order, the immigration judge discharged the petitioner's attorney. At the next scheduled hearing, Mr. Soriano disappeared without a lawyer, having been discharged by the immigration judge. And the immigration judge did not ask him if he wished to proceed per se, if he wished to proceed without a lawyer. This counsel inquiry that Tawadros speaks of is actually rooted in, and it's an inherent part of the immigration judge's supervisory responsibility of preparing cases for trial. Immigration judge. So given all that, how did you exhaust the or how did he exhaust these claims before the DIA? The Tawadros inquiry, the counsel issue, whether or not someone has a right to counsel or the right to effective counsel, is all rooted in the Fifth Amendment due process. Yes, I understand that. And I understand your, the argument you're making. But you do have to present that argument first to the Board of Immigration Appeals. So how did that happen in this case? In this case, it happened in two different ways, Your Honor. First, the legal claim of due process was presented to the Board of Immigration Appeals, and the Board of Immigration Appeals ruled on the due process claim. The petitioner can raise, once an illegal claim has been asserted, any argument or theory in support of that legal claim can be, can be changed or advanced. Here's a legal claim of due process. A violation of due process, a violation of his meaningful right to present and prepare evidence was presented to the Board of Immigration Appeals, and the Board ruled on it. Here, before this Court, Mr. Sobrianos has merely refined that argument and presented it more in context of the Tawadros issue, of that counsel issue. Second, the factual basis, and that's all that's required under this Court's decision in Scalop, S-O-C-O-P, that the factual basis was raised before the Board of Immigration Appeals. So the Board had the factual basis raised in the parties' briefs, which was sufficient notice to the Board that this was at issue, and the Board could have corrected the matter by remanding it. But the Board found that there was no prejudice shown. Correct. And the Board's decision on that point is, is wrong for two different reasons. What evidence would he have presented had he been available, had counsel available? There's several types of evidence he would have presented. First and most notably, as the immigration noted in his decision, he would have presented the testimony of his child's mother. She was not present at the hearing. He did not understand that she could be present at the hearing to present testimony. The immigration judge noted her absence at the hearing. And, in fact, in his decision said, this is not a case where I have both parties before me that I can ask questions of. So he certainly would have presented that evidence. What evidence regarding the child's mother would he have presented? He would have presented fact of evidence from the mother explaining the emotional attachment, financial arrangements, any kind of. But do you think that that was sufficient evidence to show the unusual and exceptional hardship required? It could have been. But the point is. Doesn't he have the burden of showing that more likely than not that would have been the finding based on this evidence? If all he had shown was the emotional attachment of the child and the economic effects of separation, case after case after case from this circuit holds that is not sufficient. In that we don't dispute that analysis of the cancellation law. However, the prejudice standard is far different. The prejudice standard that this circuit relies on to determine whether or not prejudice has been shown, there's two different standards. First, if there's been a denial of the right to counsel, it's unclear in this circuit, it's an open question, whether any kind of prejudice must be shown. Other circuits have said that once there's been a denial of right to counsel, prejudice does not need to be shown. That's a statutory argument, though, isn't it? The statutory right of counsel? It's both the. I mean, the difference is if you catch it in a due process argument, then we said, as a general matter, you have to show prejudice from a denial of due process. So if the argument is constitutional and it's based in the due process clause, there's some argument in our circuit that we do require prejudice. On the other hand, if it's a denial of a statutory right, that may be a different matter. I'm not conceding the point. I'm not sure I agree. My understanding of the case would be different, that Tawadis actually speaks and says differently. Well, Tawadis talked about prejudice, didn't he? Tawadis did speak about prejudice. And it was a due process claim and not a statutory claim of denial of counsel. Correct. So why don't you think you have to show prejudice if it's a due process claim? If Tawadis was a due process claim and they did – Tawadis actually said, well, we're going to find – we find prejudice. We don't have to answer that question. And that's what most of the cases have decided. We don't need to answer that question because we can infer prejudice from the record. And that's the same thing that the Court here can do, is they can infer prejudice from the record. And the prejudice standard is actually, was there the potentiality? Was there – did the immigration judge's errors potentially affect the outcome? We do not need to show that he would have likely prevailed. It need not be shown that he has a super strong case. It just merely needs to be shown that were the proceedings potentially affected – and if those proceedings were potentially affected, then that prejudice standard is satisfied. And if there are no other questions, I'd like to reserve the remaining time. Thank you. May it please the Court. Mr. Chairman, I would like to begin by saying that I am not going to support Michael Truman on behalf of the government in this case. Your Honors, this Court should deny the instant petition for review because the Board of Immigration Appeals properly determined that the immigration judge did not violate Petitioner's right to a full and fair hearing in this case. And in any event, there is simply no prejudice to having Petitioner proceed on his own in this hearing. First, I'd like to talk about the right to counsel issue. Arguably, that issue was not exhausted to the Board. But even if it was, there was no violation of the right to counsel in this case. When you say arguably not exhausted, what do you mean? Our argument is that he did not present the legal theory that he did not give a knowing and voluntary waiver to the immigration judge. That legal theory was never presented to the Board. The Board didn't have a chance to rule on it. And your argument is that when he was raising the general due process arguments that touched on that, but didn't mention it, that's not enough. His brief on the appeal, in his appeal to the Board, he presented a claim of violation of due process that his right to a full and fair hearing was violated. And it was that he wasn't informed of the proper standard for cancellation. He wasn't informed of whether he should present a witness or all these things. He mentioned in a footnote, sort of as like this compounds the violation of due process, that he didn't have an attorney. That's what he says. So the fact that he didn't have an attorney was factually stated in the brief. But he never said my right to counsel was violated because the immigration judge didn't obtain a knowing and voluntary waiver of that right. Kennedy. I think Judge Bayham may have had a question. Your Honor. Did you have a question? No, no. I think clearly if you look at the introduction of the immigration hearing in this case, the exchange between Petitioner and the immigration judge, the immigration judge asked him, immigration judge first of all recognized that Petitioner was without counsel and asked him, are you ready to proceed? Today is the day for your cancellation hearing. And Petitioner said, yes, I'm ready to proceed. The immigration judge then explained the cancellation standard and said, this is what we're going to do. Are you ready to proceed? He says, yes, I'm ready. Clearly he was willing to proceed without counsel. The immigration judge knew it. Did the immigration judge say in exact terms, are you now knowingly and voluntarily waiving your right to counsel? No, the immigration judge didn't say that. But Petitioner had already indicated that he was willing and ready to proceed in this case. What's your best case that says that that constitutes a waiver? Well, I think you can rely on the Tawadros case, even though Tawadros does put out that standard and explain that there needs to be a knowingly and voluntarily  There's no requirement, Tawadros, that those actual terms have to be said. In the criminal context, we certainly wouldn't accept that statement as a waiver of the right to counsel. Right. But this is not the criminal context. Or an assertion of Faretta rights, either. So I know it's not. But, I mean, those are the cases we have for analogy, which may be analogous in terms of the analysis of a waiver, what you need to do to have a knowingly and voluntarily waiver. So I gather you don't have a case on point that says, when a Petitioner answers, are you ready to proceed? And he says, yes. I do not. I do not, Your Honor. But your argument is that's enough. That that is sufficient. All right. Furthermore, Petitioner was informed of his right to counsel. At a hearing eight months earlier, the immigration judge had explained to him that he had a privilege of obtaining counsel at his own expense. In the notice, the hearing notices preceding this final hearing, it was stated that he had the privilege of obtaining counsel. He was able to obtain it. And, furthermore, the reason he didn't have counsel was his own doing, in fact. He was unwilling to enter into a contract with his attorney. He was unwilling to collaborate with his attorney. And so his attorney moved to withdraw. His attorney didn't want to go forward when there was no contractual agreement, when he wasn't getting help on the case. It shouldn't have been a surprise to him to come and be prepared to proceed. He had already received hearing notices requiring that effect. Furthermore, there really is no prejudice in this case. I want to talk about the cancellation standard, because when the Board has found that there is an exceptional, extremely unusual hardship, it's been in extreme cases, cases where a case, for example, where the single mother is providing for her children, her children do not speak Spanish, she's the sole caregiver, she's trying to go back to Mexico now and try to provide for these U.S. citizen children that don't speak Spanish. The Court found exceptional, extremely unusual hardship in that case. In this case, it's far different. The Petitioner testified that, first of all, he's never been married to his United States citizen son's mother. They don't live together. The mother is a United States citizen and is the primary caregiver for the child. He has visiting rights or whatever. He visits his son on the weekend. But there's the mother actually has custody. The United States citizen mother actually has custody in this case. And the immigration judge recognized that, recognized that there was a hardship due to the separation, but it wasn't exceptional, extremely unusual hardship under the board's interpretation of that standard. Clearly, there just simply wasn't the prejudice here. Now, Petitioner says that he could have presented evidence to the psychologist to testify to the son's state of mind in the separation of the father. The immigration judge clearly probed that issue, clearly discussed, knew that that was the main hardship alleged, that the son was going to be separated from his father. The immigration judge knew that. There was no need to delay proceedings or to do something so that that psychologist could come in and testify to the fact that a son would miss his father if his father were sent to Mexico. And furthermore, the same argument goes for presenting the mother as a witness or the grandparents as a witness. They were going to testify that this would be difficult for the son, the separation. And, indeed, it will be, or would be, but that's not the exceptional, extremely unusual hardship standard. The son's primary caregiver is a United States citizen. The son is a United States citizen. There was further testimony that the Petitioner believed that the son's mother was dating another man, so there was a potential to have another male role model in that young boy's life. In this case, the immigration judge touched on all the hardship factors. He looked at the child's age, his physical health, the fact that he was going to be starting school soon. The son was only five, so that wasn't a big factor. But the child is in good health. The child is taken care of by a United States citizen mother. And the separation simply would just not reach the level of exceptional, extremely unusual hardship. And if there aren't any other questions from the bench, I'd simply like to ask this Court to deny an instant petition for review. Thank you, counsel. Can I rebuttal? Thank you. There are three points that I'd like to make. First, regarding was there any waiver of counsel. In order for there to have been a waiver of counsel, I mean, clearly the transcript says the immigration judge, sir, are you ready to proceed today? Are you ready to proceed? I think that happened two or three times. He says yes, yes. It can't be a waiver of counsel. Well, I understood that this Jornbach, the lawyer that tried to withdraw from the case and finally did withdraw, what does that have to do with waiver? He was apparently negotiating with a lawyer in Los Angeles. Then he goes to Portland. And I can understand why there might be some financial problems about getting a lawyer from Los Angeles to go to Portland to hear and argue one of these cases. But that doesn't say anything about waiver. This is just a failure to get together with a lawyer. I agree. You're not claiming that he didn't know anything about the lawyer because he'd been talking to her. That's correct. The waiver of the lawyer would actually have been, that I refer to, it actually would have occurred at the final hearing where the immigration judge, where he appeared without a lawyer. And at that time, Tawadros would have kicked in. Well, a lot of, we see a lot of these cases where the lawyers succeed in getting all kinds of delays. Sometimes maybe that's what they're doing and maybe that's what they're being paid for. But how many times is the I.J. supposed to go out and help find a lawyer for a case? It's an excellent question. And there is no, the immigration judge isn't required to find a lawyer for anyone. What happens in, this Court has decided in a case called B. Watt that there's a fact or analysis that an immigration judge can take into account to control his own docket when an attorney does not, a counsel appears, or counsel does not appear and someone requests a lawyer. Go ahead and finish. Yes, sure. You appear without a lawyer and you ask for a continuance for a lawyer. Or the immigration judge would ask, would you like to proceed without a lawyer? And say the respondent or the respondent below the petitioner would have said, no, I'd like a chance to find a lawyer. But Watt factors it, creates this fact or analysis that a very simple factor for an attorney to control his own docket and determine, well, should I grant a continuance? Is that reasonable? Is there other, some ulterior, you know, obstructionist delay going on here? What are the obstacles involved for this individual giving, trying to seek a lawyer? Is it reasonable? So the B. Watt analysis is actually not implicated here because we're really on the Tawadros analysis and whether or not the immigration judge complied with it. And you had two other points you wanted to make quickly. Do you want to do that? Yes, thank you. First of all, the immigration judge actually did not properly prepare, even if it were accounts of the Pro Se case, he did not properly prepare him to proceed. That his explanation of the standard of hardship, what exceptional, extremely unusual hardship, amounted to a statement that it was, quote, very difficult. This case, this Court's cases in Jacinto and Aguiman stand for the proposition that you must provide, explain to the noncitizen what kind of evidence you might likely bring to prove that minimum threshold. And I will just leave it at that. Thank you. Thank you, counsel. The case has turned. It will be submitted.
judges: Goodwin, Thomas, Bea